UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JERRIE J. WILLIAMS,            )
                               )
      Plaintiff           )
                               )
v.                             )      No. 2:13-cv-125-JAW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social Security,)
                               )
      Defendant           )


### REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the administrative law judge wrongly interpreted raw medical evidence, failed to include in the residual functional capacity ("RFC") that he assigned to her a limitation due to her carpal tunnel syndrome, wrongly evaluated her obesity, and erroneously evaluated the opinion of a treating source. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff was insured for

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1381(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), as amended January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 11, 2013, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

purposes of SSD through June 30, 2010, Finding 1, Record at 823; that she suffered from an anxiety disorder, status post complex pelvic fracture, degenerative disc disease, carpal tunnel syndrome, depression, and polysubstance dependence, impairments that were severe but, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 823-24; that she had the RFC for sedentary work, could stand or walk two hours per eight-hour workday, could not operate foot controls frequently, could climb ramps and stairs, balance, kneel, crouch, and crawl occasionally, could never climb ladders, ropes, or scaffolds, could not interact with the public, must avoid hazards, vibrations, uneven ground, and unprotected heights, and could perform the basic mental demands of work on a sustained competitive basis, Finding 5, *id*. at 827; that she was unable to perform any past relevant work, Finding 6, *id*. at 835; that, given her age (34 on the alleged date of onset of disability, January 1, 2007), at least high school education, work experience, and RFC, using the Medical-Vocational Rules in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making led to the conclusion that there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id*. at 835-36; and that, therefore, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time from the alleged date of onset through the date of the decision, March 16, 2012, Finding 11, *id*. at 837. The Appeals Council declined to review the decision, *id*. at 806-08, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

    The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v.*

*Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Carpal Tunnel Syndrome

The plaintiff complains that the administrative law judge found her bilateral carpal tunnel syndrome to be a severe impairment yet included no corresponding physical limitations in her RFC, with the possible exception of avoiding exposure to vibration. Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Itemized Statement") (ECF No. 11) at 2. She contends that the administrative law judge must have "impermissibly interpreted raw medical evidence" in order to tie this limitation to this impairment. *Id*. at 3.

However, as the defendant points out, Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 13) at 3, there is medical evidence in the record that supports the limitation, a Physical Residual Functional Capacity Assessment by a state-agency physician reviewer, Dr. Robert Hayes, dated January 30, 2009. Record at 455-463. He

3

noted that the plaintiff should avoid concentrated exposure to vibration, and avoid "vibratory environments." *Id*. at 459. The administrative law judge "attribute[d] great weight to the physical residual functional capacity assessment of Robert Hayes, D.O., a State agency medical consultant." *Id*. at 834. When Dr. Hayes reviewed the plaintiff's medical records, she had not yet claimed disability due to carpal tunnel syndrome, and her surgeries for this impairment occurred in March 2011 and January 2012, Record at 829, well after Dr. Hayes issued his assessment. Thus, the vibration limitation was not tied to the plaintiff's carpal tunnel syndrome.[2]

The plaintiff also asserts that the exclusion from her RFC of any limitations due to her carpal tunnel impairment is "not a harmless error" because "it cannot be predicted what effect such limitations would have on the Vocational Expert's testimony." Itemized Statement at 3.[3] If that were the legal standard for harmful error, virtually every alleged error would require remand, since its effect could never be completely predicted. The plaintiff also proffers that "a severe upper extremity impairment could contribute to inability to complete an 8 hour day on a consistent basis[.]" *Id.* That speculation is similarly insufficient to entitle the plaintiff to remand. *See Abdi v. Astrue*, No. 2:10-cv-89-GZS, 2010 WL 5452125, at *5 (D. Me. Dec. 28, 2010) (*aff'd* Jan. 24, 2011, ECF No. 16) ("[T]he mere finding that a particular impairment is severe at Step 2 does not automatically correlate to any limitations on work-related activities found to exist at Step 4.")

In this case, the administrative law judge provided a thorough discussion of his reasons for not including in the plaintiff's RFC any limitations due to her carpal tunnel syndrome, even though he found it to be a severe impairment. Record at 829, 832-833. In addition, the plaintiff

---

[2] The same limitation was included in the first decision on the plaintiff's claim, when carpal tunnel syndrome was not involved. Record at 13. The current decision follows a court remand.
[3] In addition, as her attorney conceded at oral argument, the only evidence of limitations due to carpal tunnel syndrome offered by the plaintiff is her own testimony. Itemized Statement at 3. This is insufficient. *Gould v. Astrue*, No. 2:11-cv-265-JAW, 2012 WL 1098471, at *3 (D. Me. Mar. 31, 2012).

4

must demonstrate how the alleged error would have changed the outcome of her claim if it were rectified. Here, the plaintiff offers nothing beyond her testimony, Itemized Statement at 3; the administrative law judge's stated reasons for rejecting that testimony are sufficient.

### B. Obesity

The plaintiff contends that the administrative law judge's evaluation of her impairment of obesity "fails to comply with S[ocial] S[ecurity] R[uling] 02-1p." *Id*. at 4.[4] Specifically, she asserts that, the RFC assigned to her in the current decision, which finds her obesity to be a severe impairment, imposes no further physical limitations than did the first decision on her claims, which did not find obesity to be a severe impairment. Itemized Statement at 5. This is a different argument, and a different situation, from those presented in *Kaylor v. Astrue*, No. 10-cv-33-GZS, 2010 WL 5776375 (D. Me. Dec. 30, 2010), the only authority other than the Ruling cited by the plaintiff in support of this argument.

In *Kaylor*, the attorney who represents the plaintiff in the instant case argued successfully that the administrative law judge's failure to identify any functional effects of the plaintiff's obesity, which she found to be a severe impairment, entitled the plaintiff to remand. *Id*. at *2-*3. Here, the administrative law judge said the following about the plaintiff's obesity:

> The claimant testified during her initial hearing that she is 5 foot, 4 inches in height, weighing approximately 185 pounds. She further testified, during that hearing, that her obesity does not interfere with her ability to work and is therefore not severe. Now, despite weighing less, she testified at her supplemental hearing that, in fact, her obesity does affect her ability to work. However, the undersigned notes that she [] is unable to articulate how this impairment interferes with her ability to work. Nevertheless, as discussed in detail below, the undersigned accounted for her obesity in assessing her residual functional capacity.

---

[4] The plaintiff does not specify *how* the decision fails to comply with the cited Ruling, asserting only that the Ruling "states that [o]besity may be particularly relevant in cases of musculoskeletal impairments, as here, and can contribute to inability to complete an 8 hour day/40 hour week work schedule, supporting disability pursuant to SSR 96-8p." Itemized Statement at 5.

5

> \* \* \*
> As discussed previously, despite the claimant's prior testimony that her obesity is not a severe impairment, she testified at her supplemental hearing that, despite weighing less, her obesity interferes with her ability to work. However, she is unable to articulate how her obesity prevents her from working. Nevertheless, the undersigned accounted for her obesity in the above[]residual functional capacity by limiting access to ladders, ropes or scaffolds.

Record at 823, 829. The final sentence of the second paragraph quoted above does, in fact, identify functional, work-related effects of the plaintiff's obesity.

Still, the plaintiff is correct in noting that the same functional limitation was included in the RFC assigned to the plaintiff in the first decision of the commissioner. *Id*. at 13. The defendant argues that, since there was medical evidence in the record at the time of the first decision that supported the limitation, *see id.* at 457 (RFC assessment by Dr. Hayes, a state-agency reviewer), and the plaintiff was obese at that time, *id*. at 41, and "she does not suggest that her physical RFC has changed" since Dr. Hayes's assessment, there is no error in the current decision. Opposition at 6-7. I disagree.

The fact that the second decision is erroneous in this regard does not end the matter, however. The defendant recounts the administrative law judge's observation that the plaintiff was "unable to articulate how this impairment interferes with her ability to work," Record at 823, and contends that there is no medical evidence to support functional limitations caused by obesity greater than those included in the second RFC. Opposition at 8.

The plaintiff cites the opinion of George Roth, Jr., M.D., as evidence of an "inability to complete an 8 hour day/40 hour week work schedule" as a result of her obesity. Itemized

Statement at 9.[5] The problem for the plaintiff with the cited form filled out by Dr. Roth, aside from the fact that it was completed before the first decision on her claims was issued, is that it attributes the limitations checked, including the answer "No," to the question "Is the Claimant able to complete an 8 hour/day, 40 hour/week work week on a sustained, ongoing basis without undue interruptions or absences?", to "low back, right lower extremity pain" and not to obesity. Record at 792-95.

On the showing made, the plaintiff is not entitled to remand on this basis.

### C. Treating Source Opinion

The plaintiff's final challenge is to the administrative law judge's treatment of the form completed by Dr. Roth. Itemized Statement at 5-6. Specifically, she asserts that the decision "fails to effectively discredit this treating source opinion." *Id*. at 6.[6]

The administrative law judge said the following about Dr. Roth's opinions as set forth on the form (Exhibit 38F):

> The undersigned attributes little weight to the medical source statements of George R. Roth, Jr., M.D. (Exhibits 34F and 38F). Dr. Roth essentially limited the claimant to [a] significantly reduced range of sedentary work and opined that she would be unable to sustain such work for an 8-hour workday, 40-hour workweek (Exhibit 38). However, Dr. Roth based his opinion on his last exam visit with the claimant in May 2009. As such, he did not have knowledge of Dr. Pavlak or Dr. Pier's reports, or the results from the bone scan. Moreover, the undersigned attributes no weight to his opinion noted on a prescription pad that the claimant is unable to work until further notice. Dr. Roth's opinion, in this respect, does not quantify what the claimant's residual capacities are and touches on an issue reserved to the Commissioner (20 C.F.R. 404.1527(e) and 416.927(e).

---

[5] The plaintiff actually avers that Dr. Roth's statement shows that her obesity "can contribute" to such an inability. Itemized Statement at 5. At this stage of the proceedings, a possibility is insufficient to entitle the plaintiff to remand. She must provide evidence that her obesity will cause that inability, either by itself or in combination with her other severe impairments.

[6] The Itemized Statement asserts, again in conclusory fashion, that, in this regard, "the Decision violates the requirements of SSRs 96-2p, 96-5p, and 06-3p" without specifying *how* these violations occurred or *what* provision of each Ruling was allegedly violated. In the absence of such specific details, the court cannot consider these arguments.

Record at 834.

The plaintiff points out that Dr. Roth was the recipient of Dr. Pavlak's report, Record at 578-80, which is dated before the date of Dr. Roth's form, making the administrative law judge's statement that Dr. Roth "did not have knowledge of" Dr. Pavlak's report incorrect. Itemized Statement at 6. She contends that the administrative law judge's mention of the bone scan shows that he was interpreting raw medical data in order to use the bone scan to discredit Dr. Roth's conclusions. *Id* Finally, she notes that the medical expert who testified at the first hearing "did not address Dr. Roth's report and did not address functional limitations in any respect." *Id*.

The defendant's response, that the plaintiff "has not established that Dr. Roth actually received [Dr. Pavlak's] report, let alone that he considered it[,]" Opposition at 11, puts too fine a point on the plaintiff's argument. Her assertion that the administrative law judge's statement that Dr. Roth "did not have knowledge of" Dr. Pavlak's report is untrue is much more likely to be accurate, under the circumstances, than the defendant's speculation otherwise. The defendant has not cited any evidence in the record that supports the administrative law judge's statement. The administrative law judge's statement is most likely wrong, reasonably viewed.

With respect to the bone scan, the administrative law judge's opinion does not make clear how that contradicts any of Dr. Roth's specific opinions. The bone scan was read as "[e]ssentially normal." Record at 723. Perhaps the administrative law judge meant that a normal bone scan was inconsistent with one or more of Dr. Roth's opinions, but he does not say that, and it is not apparent to a lay person. The defendant cannot rely upon the bone scan to support the administrative law judge's treatment of Dr. Roth's opinions.

The plaintiff does not specify how the fact that the medical expert at her first hearing did not address Dr. Roth's conclusions of functional limitations in general serves to require remand.

The defendant does not respond to this argument. The plaintiff points to no portion of the administrative law judge's opinion that wrongly cites Dr. Roth's absent testimony on either point, nor does she suggest why the absence of such testimony requires remand. The point that she intended to make with this observation is simply not apparent.

Assuming *arguendo* that the problems with the administrative law judge's critique of Dr. Roth's opinions set out by the plaintiff establish that he failed to evaluate those opinions correctly, another hurdle remains for the plaintiff, who must show that this error was not harmless. Where, as here, there is other medical evidence in the record, much of it specifically mentioned in the opinion, that supports the RFC assigned to the plaintiff by the administrative law judge, despite the fact that Dr. Roth's opinions would support a more restricted RFC, the case should not be remanded. *See, e.g., Mason v. Astrue*, Civil No. 08-17-B-W, 2008 WL 4822238, at *6 (D. Me. Nov. 4, 2008).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of December, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge